048923/07596

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>R.J. SCHINNER CO., INC.,<br><br>    Defendant. | Civil Action No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, GREAT AMERICAN INSURANCE COMPANY ("GAIC"), by and through its attorneys, CASSIDAY SCHADE LLP, and for its Complaint for Declaratory Judgment against Defendant, R.J. SCHINNER CO., INC., states as follows:

## PARTIES AND VENUE

1. Plaintiff, GAIC, is a corporation with its principal place of business in Cincinnati, Ohio, and is organized under the laws of the State of Ohio.

2. Defendant, R.J. SCHINNER CO., INC. ("R.J. Schinner"), is a corporation with its principal place of business in Menomonee Falls, Wisconsin, and is organized under the laws of the State of Wisconsin.

3. Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this dispute because there is complete diversity between the plaintiff and the defendant herein, and the amount at issue exceeds $75,000, exclusive of interest and costs.

4. Further, pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because this is a judicial district in which the defendant resides, and where a substantial portion of the events giving rise to the claim occurred.

## NATURE OF THE ACTION

5. This declaratory judgment action seeks to establish a lack of coverage under an excess insurance policy for costs associated with the cleanup of debris caused by the flooding of a warehouse leased by R.J. Schinner, for which coverage is excluded pursuant to a lack of a covered "occurrence," lack of "property damage," and in the alternative, pursuant to the pollution exclusion and by other exclusions and conditions.

6. GAIC issued Excess Liability Insurance Policy No. TUE 3-02-29-14-02 (the "Excess Policy") to R.J. Schinner as the Named Insured for the Policy Period of March 1, 2021 to March 1, 2022. A true and correct copy of the Excess Policy, with the premium amount redacted, is attached hereto as Exhibit A.

7. The Excess Policy provides a $10 million Limit of Insurance for Each Occurrence and as a General Aggregate Limit (where applicable), subject to the additional terms and conditions of the Excess Policy.

8. The Excess Policy provides in part in its Insuring Agreements, Section II. ("LIMITS OF INSURANCE"), Item B.1., that "[t]his policy applies only in excess of the Underlying Limits of Insurance shown in Item 5. of the Declarations."

9. Item 5. of the Declarations of the Excess Policy refers to a "SCHEDULE OF UNDERYING POLICIES," which includes commercial general liability insurance coverage provided by Zurich American Insurance Company ("Zurich") on a primary basis, under Policy No. GL0819625019, which is in effect for the policy period of March 1, 2021 to March 1, 2022 (the "Primary Policy"). A true and correct copy of the Primary Policy, with the premium amount redacted, is attached hereto as Exhibit B.

10. The Primary Policy provides a $1 million Each Occurrence Limit of Liability, subject to a $2 million General Aggregate Limit of Liability. A true and correct copy of the Policy Limits is attached as Exhibit C.

11. On March 27 and 28, 2021, near record rainfall resulted in flash floods that caused water to flow into a warehouse leased to, and operated by, R.J. Schinner and other tenants, at 642 Space Park South Dr., Nashville, Tennessee.

12. The flood water that entered the warehouse carried contents from the warehouse, including plastic bags, paper products, and other restaurant supply products and items, into Mill Creek, which is adjacent to the warehouse, and washed the contents downstream.

13. When the flood waters receded, the waterlogged warehouse contents were deposited along the banks of Mill Creek as debris.

14. Shortly after the flood waters receded, R.J. Schinner agreed to clean up and dispose of this flood debris and hired a company called Clean Harbors to remove and dispose of said debris from the banks of Mill Creek.

15. R.J. Schinner claims that it has incurred in excess of $1 million in cleanup costs for the removal and disposal of the flood debris from along Mill Creek.

16. Prior to incurring the cleanup costs for the removal and disposal of the flood debris, R.J. Schinner did not request GAIC's consent to incur said costs.

17. On or about June 9, 2021, GAIC was notified of a claim under the Primary Policy, and of a potential claim under the Excess Policy, for the flood debris cleanup and disposal costs incurred by R.J. Schinner ("Flood Debris Cleanup Costs Claim").

18. R.J. Schinner has requested that GAIC acknowledge coverage for the Flood Debris Cleanup Costs Claim under the Excess Policy to the extent that such costs exceed the Primary Policy's $1 million Each Occurrence Limit of Liability.

## **THE EXCESS POLICY**

19. The Excess Policy includes the following relevant provisions:

**INSURING AGREEMENTS**

**1. COVERAGE**

A) We will pay on behalf of the Insured "loss" in excess of the Underlying Limits of Insurance shown in Item **5.** of the Declarations, but only up to an amount not exceeding the Company's Limits of Insurance as shown in Item **4.** of the Declarations. Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the First Underlying Insurance Policy, as shown in Item **5.** of the Declaration …

**II. LIMITS OF INSURANCE**

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

**1.** Insureds;

**2.** Claims made or suits brought; or

**3.** Persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

**1.** This policy applies only in excess of the Underlying Limits of Insurance shown in Item **5.** of the Declarations …

**III. DEFENSE**

      **A.**      We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

      **B.**      We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our own expense.

      **C.**      If all Underlying Limits of Insurance stated in Item **5.** of the Declarations are exhausted solely by payment of "loss," we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a "loss" under this policy. Such investigation or defense shall be at our own expense. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of "loss."

…

**V.**    **DEFINITIONS**

"Loss" means those sums which you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage.

**VI.**    **CONDITIONS**

      **E.**      **Notice of Occurrence**

           **1.**      You must see to it that we are notified as soon as practicable of an occurrence which may result in a "loss" covered under this policy. To the extent possible, notice will include:

              **a.**      how, when and where the occurrence took place;

              **b.**      the names and addresses of any injured persons and witnesses;

              **c.**      the nature and location of any injury or damage arising out of the occurrence.

**2.** If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.** You and any other involved Insured must:

   **a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   **b.** authorize us to obtain records and other information;

   **c.** cooperate with us in the investigation, settlement or defense of the claim or suit; and

   **d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**4.** The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.  Other Insurance**

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy. Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for funding of legal liabilities …

**H.  When "Loss" is Payable**

Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying

Limits of Insurance stated in Item **5.** of the Declarations. When the amount of "loss" has finally been determined, we will promptly pay on behalf of the Insured the amount of "loss" covered under the terms of this policy …

20. The Excess Policy also contains Endorsement No. TAU 9554 (Ed. 11 97), entitled

"POLLUTION EXCLUSION – EXCEPTION FOR NAMED PERIL OF HOSTILE FIRE"

(hereinafter "Pollution Exclusion"), which provides in relevant part as follows:

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY POLICY**

The following is added to **Section IV – EXCLUSIONS**:

This policy does not apply to any "loss," including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

1. The actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

2. Any request, demand or order the any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any "loss," costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste

material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to bodily injury or property damage arising out of:

1. The following named peril:

   a. heat, smoke or fumes from a "hostile fire" at the Insured's premises or job location. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be;

   to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

## **THE PRIMARY POLICY**

21. The Primary Policy includes the following relevant provisions in the Commercial General Liability Coverage Form:

   **SECTION I – COVERAGES**

   **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1. Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III –** Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II –** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period….

**2. Exclusions**

This insurance does not apply to: …

**j. Damage To Property**

"Property damage" to:

- **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; …

- **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it …

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

- **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

- **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms …

## COVERAGE B --- - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

> > **(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance**; and
> >
> > **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> > **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period …
>
> **2. Exclusions**
>
> > This insurance does not apply to: …
> >
> > **m. Pollution**
> >
> > > "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> >
> > **n. Pollution-related**
> >
> > > Any loss, cost or expense arising out of any:
> > >
> > > **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants;" or
> > >
> > > **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring,

cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants" …

**SECTION V -- DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement …

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time …

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement …

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person s right of privacy;

    f. The use of another's advertising idea in your "advertisement;" or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed …

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

13

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it …

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products….

22. "Your work":

    a. Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  22. The Primary Policy also contains an endorsement entitled "TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION," which provides in relevant part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> This insurance does not apply to:
>
> **f.** **Pollution**
>
>   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time …
>
>   **(2)** Any loss, cost or expense arising out of any:
>
>     **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants;" or
>
>     **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way

responding to, or assessing the effects of, "pollutants."

## COUNT I

## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 1331

## THERE IS NO COVERAGE UNDER THE EXCESS POLICY FOR THE COST OF THE CLEANUP CAUSED BY THE MARCH 27 and 28, 2021 FLOODING OF THE WAREHOUSE

23. GAIC restates and incorporates the foregoing paragraphs 1 through 22 as though fully set forth and stated herein.

24. GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs incurred by R.J. Schinner because the Flood Debris Cleanup Costs Claim does not involve "loss" as that term is defined by the Excess Policy.

25. GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs incurred by R.J. Schinner because R.J. Schinner was under no legal obligation to pay damages in connection with the cleanup of Mill Creek.

26. Alternatively, GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs incurred by R.J. Schinner because the Flood Debris Cleanup Costs Claim does not involve "bodily injury," "property damage," an "occurrence," or "personal and advertising injury" as those terms are defined by the Primary Policy.

27. Alternatively, GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs because the flood debris is a "pollutant" as that term is defined in the Excess Policy, and because Pollution Exclusion provides that the Excess Policy does not apply to any "loss" arising out of or in any way related to: the actual, alleged, or threatened presence, discharge, dispersal, seepage, migration, release, or escape of

16

Case 2:21-cv-01018   Filed 08/30/21   Page 16 of 19   Document 1

"pollutants," however caused; any request, demand or order the any Insured or others clean up, remove, contain, or in any way respond to the effects of "pollutants;" and steps taken or amounts incurred by a governmental unit or any other person or organization to clean-up, remove, contain, or assess the effects of "pollutants."

28. Alternatively, GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs because R.J. Schinner breached the Excess Policy's Conditions by voluntarily incurring and paying for the cleanup costs without GAIC's consent.

29. Alternatively, GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs because the Primary Policy's Coverage A exclusions for Damage to Property (Exclusion j.), and Impaired Property (Exclusion m.) bar coverage for the Flood Debris Cleanup Costs Claim.

30. Alternatively, GAIC does not have any obligation under the Excess Policy for the flood debris cleanup and disposal costs because the Primary Policy's Coverage B Pollution (Exclusion m.) and Pollution-Related (Exclusion n.) exclusions bar coverage for the Flood Debris Cleanup Costs Claim.

31. Alternatively, GAIC does not have any obligation under the Excess Policy to pay for the flood debris cleanup and disposal costs because the flood debris constitutes a "pollutant," and the "TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION" in the Primary Policy bars coverage for "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; and for

any loss, cost or expense arising out of any: request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants;" or for any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

32. Accordingly, there is no coverage under the Excess Policy for the flood debris cleanup and disposal costs caused by the March 27 and 28, 2021 flooding of the R.J. Schinner warehouse.

33. Accordingly, GAIC has no duty to indemnify R.J. Schinner under the Excess Policy in connection with the Flood Debris Cleanup Costs Claim.

34. Defendant, however, denies that GAIC has no duty under the Excess Policy to indemnify R.J. Schinner in connection with the Flood Debris Cleanup Costs Claim.

35. An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, the Plaintiff, Great American Insurance Company, respectfully requests this Honorable Court to issue an order:

(a) declaring that Great American Insurance Company has no duty to indemnify R.J. Schinner Co., Inc. in connection with the cleanup and disposal of the flood debris caused by the March 27 and 28, 2021 flooding of the R.J. Schinner warehouse; and

(b) awarding Great American Insurance Company such other and further relief as the Court deems just and proper.

Respectfully submitted,

CASSIDAY SCHADE LLP

                                              /s/ John J. Reid
                                              One of the Attorneys for Plaintiff, GREAT AMERICAN INSURANCE COMPANY

John J. Reid
WI Bar No. 1057458
CASSIDAY SCHADE LLP
330 East Kilbourn Avenue, Suite 575
Milwaukee, WI 53202
(414) 224-1086
(414) 224-6044 – Fax
jreid@cassiday.com

9939642

19
Case 2:21-cv-01018   Filed 08/30/21   Page 19 of 19   Document 1